IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| KEVIN ATKINSON d/b/a ROGUE SATELLITE COMICS, | § § § | |
| Plaintiff, | § § | |
| | § | CASE NO.  5:21-CV-00079-RWS |
| v. | § § | |
| NETFLIX, INC. ET AL., | § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Defendants Netflix, Inc.; Netflix Studios, LLC; Dark Horse Comics, LLC; Dark Horse Entertainment, Inc.; Universal Content Productions, LLC; and Gerard Way's (collectively "Defendants") Motion to Dismiss for Failure to State a Claim.  Docket No. 30. Plaintiff Kevin Bennett Atkinson d/b/a Rogue Satellite Comics has alleged that Defendants infringed his copyrighted works and a particular character (Docket No. 1); Defendants seek to dismiss Atkinson's copyright action pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court heard oral argument on Defendants' Motion to Dismiss on October 12, 2021.  Docket No. 42.  For the reasons set forth below, Defendants' Motion to Dismiss (Docket No. 30) is **GRANTED**.

## BACKGROUND

In the mid-1990's, Atkinson created a fantasy world with space-faring characters in his Rogue Satellite Comics.  Docket No. 1 ¶ 14.  Within that world, Atkinson devised a character named Kingfish—a "fish with long, flowing fins; [who] sits inside a glass, bell-jar-shaped

container atop a humanoid body with a speaker near the front base of the jar."  *Id.* ¶ 22.  Atkinson registered these works with the United States Copyright Office.  *Id.* ¶¶ 14–19.

In 2008, Defendant Way created a comic book entitled "The Umbrella Academy" that was published by Defendant Dark Horse Comics, LLC.  *Id.* ¶ 29.  Defendant Netflix adapted the comic book into a streaming series of the same name in February 2019.  *Id.* ¶¶ 31–32.  "The Umbrella Academy" features gifted youths with extraordinary powers who travel through time to stop the apocalypse.  Docket No. 30 at 2.  And "The Umbrella Academy" featured a character—A.J. Carmichael—who leads an organization that is not keen on the gifted youths' attempts to rewrite history.  *Id.* at 2–3.  Carmichael is an antagonist in the series; he is also a fish that resides in a bell jar above a humanoid frame that he controls.  *Id.*; Docket No. 1 ¶¶ 35–42.

Defendants move to dismiss this action pursuant to Rule 12(b)(6) because they contend Atkinson failed to properly state a claim for copyright infringement.  Docket No. 30.  Atkinson opposes.  Docket No. 36.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require each claim in a complaint to include a "short and plain statement . . . showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff.  *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012).  The court may consider "the complaint, any documents attached to the complaint, and any

documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court must then determine whether the complaint states a claim for relief that is plausible on its face.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

To establish copyright infringement, a party must prove: (1) ownership of a valid copyright and (2) actionable copying. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003). Actionable copying consists of factual copying—involving (i) access to the copyrighted work prior to creation of the infringing work and (ii) probative similarity—and substantial similarity. *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1037 (5th Cir. 2015). If access cannot be shown, a party may prove factual copying by "showing such a 'striking similarity' between the two works that the similarity could only be explained by actual copying." *Armour v. Knowles*, 512 F.3d 147, 152 n.3 (5th Cir. 2007).

Here, Defendants do not contest Atkinson's copyright ownership[1] and instead argue that Atkinson has not properly alleged actionable copying of its storyline and characters pursuant to Rule 12(b)(6).  Indeed, Defendants contend that no similarity exists between the works.  Docket No. 30 at 20.  The Court addresses these contentions in turn.

## I.      Rogue Satellite Comics Storyline

As an initial matter, Defendants move to dismiss Atkinson's copyright infringement claim concerning its Rogue Satellite Comics storyline.  Defendants argue that—to the extent Atkinson pled a copyright infringement claim concerning its storyline at all—Atkinson's storyline contains only unprotectable literary elements, such as time travel and features stock characters and settings. *Id.* at 13.  Defendants contend that Rogue Satellite Comics and "The Umbrella Academy" differ as a whole from a literary and aesthetic standpoint because the plot and overall themes are not similar.  *Id.* at 12 n.11.  And Defendants indicate there is a key difference between the storylines: Kingfish sought to "alter history," whereas Carmichael fights against that alteration occurring. Docket No. 37 at 1.

Atkinson responds that the storyline contained in his Rogue Satellite Comics is copyrightable and infringed.  Docket No. 36 at 9.  Atkinson argues that both his storyline and that found in "The Umbrella Academy" contain time travel elements.  *Id.* at 9.  Atkinson points to a similar "time travel clash" between the two works wherein a "TIME JAUNT ALTERED HISTORY!" *Id.* at 10.  Atkinson also highlights a storyline wherein a fictitious group is interested in repairing time to ensure key historical events—such as President John F. Kennedy's assassination—occur so as to not disrupt the flow of time.  *Id.* at 13.

---

[1] Atkinson has represented that "[t]he registered works that are primarily at issue in this suit are Rogue Satellite Comics #2, Rogue Satellite Comics #3, Rogue Satellite Comics #4 (Special Issue), Rogue Satellite Comics: Crossroads to Lambada, and Rogue Satellite Comics: The Complete Collection ('the Copyrighted Works at Issue')."  Docket No. 1 ¶ 20.  The copyright registrations for these works can be found at Docket Nos. 1-3 to 1-7.

The Court determines that Atkinson has not sufficiently pled a copyright infringement claim concerning his storyline in Rogue Satellite Comics.  In his complaint, Atkinson simply pleads that it "asserts copyright infringement through Defendants' use of many scenes and features from the Copyrighted Works at Issue."  Docket No. 1 ¶ 26.  While Atkinson provides further elaboration about overlapping scenes between the two works in his motion papers—and occasionally references attachments to the original complaint, which the Court may consider here—the details provided are argumentative and not fully formed in his complaint.  Atkinson's conclusory pleadings alone are not sufficient to state a claim that is plausible on its face.  *Iqbal*, 556 U.S. at 678.

Atkinson, however, may replead his allegations concerning the storyline in Rogue Satellite Comics.

## II.    Kingfish Character

### A.  *Copyright Protection*

As to Atkinson's Kingfish character, Defendants first argue that Kingfish is unprotectable subject matter under copyright law.  Docket No. 30 at 15.  Defendants contend that Atkinson pled no facts to show Kingfish is particularly distinctive and that the mere idea of a fantasy character with a fishbowl head cannot be copyrighted.  *Id.*; Docket No. 37 at 2.  In particular, Defendants assert that a stock character—such as a talking animal—cannot be afforded copyright protection. *Id.*  Defendants argue that Kingfish is a goldfish "housed where goldfish are typically housed—in a container (a bell jar) filled with water."  Docket No. 30 at 4.

Atkinson counters that his Kingfish character is suitable for copyright protection.  Docket No. 36 at 15.  Atkinson contends that Kingfish—as an amalgamation of a body controlled by a fish in a bowl for a head—is not simply a stock character that can be found in nature.  *Id.*  Atkinson

further notes that an original selection and arrangement of otherwise common elements can still be deemed protectable. *Id.*

The Court determines that Atkinson has pled sufficient facts to show copyright protection in his Kingfish character. Copyright is proper for "a character that has a specific name and a specific appearance." *Gaiman v. McFarlane*, 360 F.3d 644, 660 (7th Cir. 2004). A character's age, title, mannerisms, name and physical features "combine to create a distinctive character. No more is required for a character copyright." *Id.*

Such is the case here. Kingfish has a specific name and appearance that, in conjunction, forms an original, distinctive character that is sufficient to be protectable under copyright law. Atkinson pled that Kingfish is:

> [C]haracterized by his highly unique and unusual physical appearance. For example only and without limitation, Kingfish is a fish with long, flowing fins; he sits inside a glass, bell-jar-shaped container atop a humanoid body with a speaker near the front base of the jar. The fish swims in a clear fluid and is not physically connected to anything inside the container.

Docket No. 1 ¶ 22. Atkinson also included in his complaint pictorial examples of Kingfish in the Rogue Satellite Comics that depict a highly stylized, distinctive character. *Id.* ¶¶ 35–38. The Court further notes that the copyrighted character in question is the entire Kingfish entity, not just the fish or fishbowl components; it is the combination that forms the Kingfish character as a whole that is protectable here. *Huffman v. Activision Publ.*, No. 2:19-CV-00050, 2020 U.S. Dist. LEXIS 248904, at *9–10 (E.D. Tex. Feb. 25, 2020). Defendants take too narrow a view by assessing component parts of the characters separately.

Viewed as a whole, Atkinson has sufficiently pled facts to make a plausible claim that his Kingfish character is protectable under copyright law.

B. *Factual Copying*

Defendants further argue that Atkinson did not properly allege factual copying between the Kingfish and Carmichael characters either through (1) access and probative similarity or (2) just through striking similarity.  Docket No. 30 at 2.  The Court addresses these two arguments in turn.

1. *Access and Probative Similarity*

As to similarity between the characters, Defendants argue that their Carmichael character is a common goldfish that lives in a water-filled bell jar atop a suit-wearing human male body.  *Id.* at 14–15.  Further, Defendants contend that their Carmichael character is more akin to a detective in a noir film in the comics and a sharply dressed executive in the Netflix adaptation.  *Id.*  By contrast, Defendants assert that Atkinson's Kingfish character is a multi-fanged fish in a bell jar, atop a cape-wearing, robotic metallic figure.  *Id.*  Defendants further contend that while Carmichael is stylistically serious and villainous, Kingfish is "pure camp."  *Id.* at 16.

On the issue of access, Defendants contend that Atkinson does not allege any facts indicating Defendants saw or had copies of any Rogue Satellite Comics.  *Id.* at 18–20.  Instead, Defendants argue that Atkinson is only relying on the small size of the commercial comic book world, a general industry presence and the passage of time to insinuate Defendants necessarily had access to the copyrighted works.  *Id.* at 19.

Atkinson responds that both Kingfish and Carmichael lead their respective organizations and are characterized by a highly unique and unusual appearance—a fish swimming in a bell jar substituted for a head, controlling a humanoid body and communicating through a chest-mounted speaker.  Docket No. 36 at 15.  On the issue of access, Atkinson argues that Defendant Way "was an aspiring comic book author at or around the time of the publication of each of the Copyrighted Works at Issue."  *Id.* at 17.  And due to the small industry size, Atkinson contends that Defendants

would have unquestionably seen the Rogue Satellite Comics featuring Kingfish.  *Id.*  Atkinson notes he distributed copies of his work to various companies and individuals in the comic and film industry—as well as on social media—all around the same 2009 timeframe when Defendant Way prepared "The Umbrella Academy" comic.  *Id.* at 17–18.

Copying may be established by "direct evidence of copying," which, due to its rarity, may be "inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity."  *Peel & Co. Inc. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001).

Probative similarity "requires a showing that the works, when compared as a whole, are adequately similar to establish appropriation."  *Gen. Universal Sys. v. Lee*, 379 F.3d 131, 141–42 (5th Cir. 2004).  Probative similarity is established if there exists "any similarities between the two works (whether substantial or not) that, in the normal course of events, would not be expected to arise independently in the two works and that therefore might suggest that the defendant copied part of the plaintiff's work."  *Positive Black Talk, Inc. v. Cash Money Recs., Inc.*, 394 F.3d 357, 370 (5th Cir. 2004).

Atkinson has properly pled facts that make a claim of probative similarity between the Kingfish and Carmichael characters that is plausible on its face.  The unique nature of two stylized talking fish, perched in a bell-shaped jar atop a humanoid body that it controls with a front-facing voice-box, is suggestive that Defendants could have copied part of Atkinson's work.  Taken as a whole, the two antagonistic characters are adequately similar.

In addition to proving probative similarity, Atkinson must demonstrate that Defendants had access to the copyrighted works.  To establish access, the creator of the allegedly infringing work must have had a "reasonable opportunity to view" the allegedly infringed work.  *Ferguson*

*v. Nat'l Broad. Co.*, 584 F.2d 111, 113 (5th Cir. 1978).  Importantly, a finding of access cannot be based simply on conjecture and speculation.  *Id.*  In his complaint, Atkinson has not pled facts that would provide more than mere a possibility of access to his works.  For example, Atkinson speculates that "the small size of the commercial comic book world and Defendant Way's involvement in it" (Docket No. 1 ¶ 23) and "Defendant Dark Horse['s] involvement and presence in the industry" (*Id.* ¶ 24) would necessarily provide and prove access.  These statements are not enough to plead access.

However, the Complaint alleges that "Atkinson often distributed copies of the Copyrighted Works at Issue to various persons within the comic book industry."  Docket No. 1 ¶ 25.  While the aforementioned conclusory pleadings alone are not sufficient to state access necessary for factual copying, Atkinson may attempt to replead his allegations based on more particularized, non-speculative information.[2]

## 2. *Striking Similarity*

When two works are strikingly similar, access may be disregarded to establish copyright infringement.  As this Court has noted, "copying may be found when a plaintiff's and a defendant's works are strikingly similar such that the trier of fact may be permitted to infer copying on that basis alone."  *Huffman v. Activision Publ.*, No. 2:19-CV-00050, 2020 U.S. Dist. LEXIS 248904, at *7–8 (E.D. Tex. Feb. 25, 2020).

When assessing striking similarity, courts utilize a stringent test that imposes a "much higher standard" than that used for substantial similarity.  *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, No. 6-12-CV-42, 2014 U.S. Dist. LEXIS 169746, at *14 (S.D. Tex. Dec. 9, 2014).

---

[2] Allowing Atkinson to replead comports with his request "to replead and assert additional facts showing access.  Such facts would include social media connections, business connections, and other factual avenues by which Defendants would have had access to Plaintiff's protected works."  Docket No. 36 at 18.

"[T]he mere existence of multiple similar characteristics is not enough." *Vallery v. Am. Girl Dolls*, No. 13-5066, 2015 U.S. Dist. LEXIS 44709, at *6 (E.D. La. Apr. 6, 2015) *aff'd* 697 F. App'x 821 (5th Cir. 2017). "Rather, a court, based on its own independent review of the works, and without reliance on any 'aid or suggestion' from the plaintiff, must conclude not only that there is overwhelming similarity between the works at issue, but that the similarity 'could only be explained by actual copying.' " *Id.* (citing *Armour v. Knowles*, 512 F.3d 147, 152 n.3 (5th Cir. 2007)).

Striking similarity between the Kingfish and Carmichael characters is not present here. While there are overlapping characteristics between Kingfish and Carmichael, the similarity between the two is not overwhelming. This is unlike cases such as *Blizzard Ent., Inc. et al. v. Lilith Games (Shanghai) Co*., where the two characters side-by-side were virtually indistinguishable based on their appearances, physical stance and stylized personas. No. 15-cv-08484, 2018 U.S. Dist. LEXIS 39341, at *21 (N.D. Cal. Mar. 8, 2018).

Here, the overall "total concept and feel" between Kingfish and Carmichael—the former "pure camp" while the latter is more sinister and villainous—are different enough that a finding of striking similarity would be improper. *Vallery*, 2015 U.S. Dist. LEXIS 44709, at *6. As both the Kingfish and Carmichael characters have been fully pled and are properly before the Court, repleading striking similarity would be futile here.

### C.   *Substantial Similarity*

Plaintiff must also show substantial similarity to plead actionable copying: "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "To support a claim of copyright infringement, the copy must bear a substantial similarity to the protected aspects of the original." *Peel & Co. v. Rug Mkt.*, 238 F.3d

391, 398 (5th Cir. 2001).  To assess substantial similarity, "a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as substantially similar."  *Cat & Dogma, LLC v. Target Corp.*, No. 20-50674, 2021 U.S. App. LEXIS 30282, at \*5 (5th Cir. Oct. 8, 2021) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527, 550 (5th Cir. 2015)).

Atkinson has properly pled that a layman could find substantial similarity between the Kingfish and Carmichael characters.  A side-by-side comparison of the characters demonstrates that they share several overlapping features.  For example: Kingfish and Carmichael are both humanoids with conversant fish controlling their bodies; the characters reside inside of a bell jar equipped with a front-facing speaking slot, at times adorned with headgear; both generally have an antagonistic persona and are leaders of organizations concerned with the flow of time.  This is enough at the motion to dismiss stage to allege substantial similarity.

Accordingly, while Atkinson has properly pled probative and substantial similarity—and that his Kingfish character is protectable under copyright law—he has insufficiently pled the access element of his copyright infringement action.  Consequently, he has not stated a complete claim upon which relief can be granted.

\* \* \*

For the reasons set forth above, Defendants' Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6) (Docket No. 30) is **GRANTED**.  It is therefore

**ORDERED** that Atkinson's copyright infringement claims as to its Rogue Satellite Comics storyline and Kingfish character against Defendants Netflix, Inc.; Netflix Studios, LLC; Dark Horse Comics, LLC; Dark Horse Entertainment, Inc.; Universal Content Productions, LLC; and Gerard Way (Docket No. 1) are **DISMISSED WITHOUT PREJUDICE**.  It is further

**ORDERED** that Atkinson may replead his copyright infringement claim concerning (1) the Rogue Satellite Comics storyline and (2) access allegations for purposes of demonstrating factual copying against Defendants Netflix, Inc.; Netflix Studios, LLC; Dark Horse Comics, LLC; Dark Horse Entertainment, Inc.; Universal Content Productions, LLC; and Gerard Way within **fourteen (14)** days of the issuance of this Order.

It is so ordered.

**SIGNED this 16th day of November, 2021.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE